W. M. COLTRANE v. J.. J. COX ET AL.

TAXES. *Lands sold to the State. List filed where. Abatement Act construed.*
That provision of the act of December 22, 1874 (Acts 1875, p. 49), which required the lists of land sold to the State for taxes to be filed in the office of the clerk of the Circuit Court, was repealed by sect. 20 of the Abatement Act of 1875 (Acts 1875, p. 11), which was a general provision, applicable, not only to the lands mentioned in the first section of the latter act, but to all other lands sold for taxes under the revenue laws of the State, and again made the chancery clerk's office the proper repository for such lists, as it was under the Code of 1871.

APPEAL from the Chancery Court of Clay County.
Hon. F. A. CRITZ, Chancellor.

On the second Monday of March, 1876, the tax-collector of Clay County sold to the State a certain tract of land for the taxes due thereon for the year 1875. The collector filed the list of lands sold to the State on that day, embracing the tract referred to, in the office of the chancery clerk of the county. No person having redeemed this tract of land within the time allowed therefor by law, W. M. Coltrane was allowed, on the 14th of February, 1878, to purchase the State's title thereto, and the auditor of public accounts made him a deed thereof. In November, 1881, Coltrane filed the bill in this case against J. J. Cox and others, who claimed an interest in the land, for the purpose of having his title confirmed and quieted. The bill set forth the facts connected with the sale of the land to the State and the complainant's purchase from the State, including the fact that the list of lands sold by the tax-collector to the State, on the second Monday of March, 1876, was filed in the office of the chancery clerk of the county. The de-

fendants demurred to the bill on the ground that the complainant had no title, for the reason that the tax-collector's sale of the land in question did not vest the State with any title, because the list of lands sold was filed in the office of the chancery clerk. The demurrer was sustained and the complainant appealed.

*L. F. Bradshaw,* for the appellant.

Under the Code of 1871, the lists of land sold to the State were to be filed in the chancery clerk's office. This was changed, however, and the lists were subsequently required to be filed in the circuit clerk's office. The Abatement Act of 1875, pp. 11–22, restored the provisions of the Code of 1871 in this respect, and this I think is the proper construction of the act. The lists of lands sold to the State after the passage of the act of 1875 were uniformly filed in the chancery clerk's office instead of that of the circuit clerk. Sect. 12 of that act required that the lists of lands made at any tax-sale should be filed with the chancery clerk. And this, taken in connection with sects. 20 and 21, show conclusively that the tax-collector should file the lists of land with the chancery clerk. Otherwise sects. 5, 9, 13, 14, 15, 16, 17, 20 and 21 have no meaning. Sect. 16 of said act provides for the sale of any lands for taxes and the time thereof, and "that the said times shall remain for all subsequent fiscal years, until otherwise changed by law." Acts 1875, sect. 16, p. 19. And the said sect. 16 further provides when lands shall become delinquent, but excepts the lands delinquent for 1874, etc. Whether the Abatement Act may be said to be general or not, it certainly applied to future sales and required that at such subsequent sales, the lists of lands sold to the State should be filed in chancery clerk's office. The acts of the called session of 1875, p. 12, seem to indicate that the Legislature regard the act of March 1, 1875, as general. The case of *Caruthers* v. *McLaran,* 56 Miss. 371, shows that the act of March 1, 1875, was general in certain respects and referred to all future sales. See also the cases of *Wolf* v. *Murphy, ante,* p. 1 ; *Cochran* v. *Baker, ante,* p. 282.

*Barry & Becket*, for the appellees.

The act of December 22, 1874, provides that the lists of lands sold to the State for taxes shall be filed with the circuit clerks. Does the Abatement Act change this? Clearly not. Sect. 1, p. 11, provides "for the abatement of all taxes upon all lands now claimed as forfeited to the State or purchased by the State for taxes." The bill shows that the land in controversy was not even assessed till 1876, and hence it was not "claimed or forfeited to the State for any taxes prior to 1874." Sect. 9 provides for the sale of said lands, referring, of course, to the land forfeited to the State for taxes prior to 1874. Acts 1875, sect. 9, p. 14. Sect. 10, p. 15, only provides that "changes in the revenue laws by amendments of the Code of 1871, and in the laws 1874, 1873 and 1872, by changes now provided for, and in force, shall govern the form and manner of sale of said lands." There is no sense in this section, but if there is any one thing we can arrive at, it is that the word "said" in these sections keeps referring back to the land that had been forfeited to the State for taxes prior to 1874. Now, sect. 12, pp. 15, 16, provides that the lists of land sold to the State, and deeded to individuals, "shall immediately upon such sale and time, provided for in sect. 9, of this act, be filed," etc. Now "such" sale in express terms refers to the sale provided for in sect. 9, p. 14, and sect. 9 provides for the sale of "said" lands, and "said" lands refers to the land mentioned in sect. 1, p. 11. Sect. 13, pp. 16–17 refers to the land "so" sold, and "such" lands and "said" lands, and to make this perfectly plain, this section when it provides for the "equity of redemption," in express terms also provides for the "equity of redemption" of lands held by the State for taxes from any other sale "of lands delinquent for said taxes of 1874." The only other section relied on by appellant is sect. 20, pp. 20–21. In the first place, it is only the duties of the circuit clerks' which are not in conflict with this act, that are to be performed by the chancery clerks, and it is certainly a conflict between sect. 2,

act of December 22, 1874 (Acts 1875, p. 49), and this sect. 20, of the Abatement Act, to require the matters to be attended to by the chancery clerk, for the act of 1874 required them to be performed by the circuit clerk. In the second place it is not the duties that are to be performed at all, but it is " all parts of chap. 30, and other laws of 1874, 1873, and 1872," " not in conflict with this act." Now, we admit, it is a wonderful performance for a chancery clerk to be " performing laws," and if those clerks had not been saved by the exception that the laws they are to perform shall not be in " conflict with this act," they would have been at their wits' end. And the latter part of this section even provides that the Code of 1871 shall not affect these laws of 1872, 1873, and 1874. So, if there ever was a law left intact, it was these laws of 1872, 1873, and 1874. But in the third place, there is not even a hint in this sect. 20 that the sheriffs shall file any lists with the chancery clerks. There is not a word in it about the duties of the sheriffs or tax-collectors.

CHALMERS, J., delivered the opinion of the court.

The lands involved in this controversy were sold to the State on the 12th of March, 1876, for the unpaid taxes of 1875, and the list evidencing this fact was filed by the tax-collector with the chancery clerk of the county. It was held by the chancellor that it should have been filed with the circuit clerk, and that by reason of the filing in an improper place, the State failed to acquire title.

By the act of December 22, 1874 (Acts 1875, p. 49), the circuit clerk's office was made the proper receptacle of the list of lands sold to the State for unpaid taxes, but this, it is insisted by appellant, was changed by sect. 20, of the "Abatement Act" of 1875. Acts 1875, pp. 11–20.

If any proposition can be confidently asserted with reference to that celebrated piece of legislation, it seems clear that by its twentieth section the chancery clerk's office was made the place of deposit for the list of lands sold to the State ; but this, it is

urged by the appellee, was not a general provision, universal in its operations, but rather special in its character, and applicable only to the particular class of lands specified in the first section of the act, for the abatement of the taxes on which the act was passed, to wit, those lands to which the State held title by reason of the non-payment of taxes due prior to the year 1874. With that diffidence which an attempt to construe the Abatement Act must ever inspire in the breast of the boldest judge we reject this view. While the greater part of it does relate exclusively to the class of lands referred to in the first section, there are many of its clauses which are general in their character and this is particularly true, as intimated by us in *Caruthers* v. *McLaran*, 56 Miss. 371, of its later sections, and seems plainly so of sect. 20. Our opinion is that the effect of that section was to restore the chancery clerk's office to its original position under the Code of 1871 as the proper place of deposit for the lists of all lands sold to the State for taxes, and such was the practical construction placed upon it at the time by the auditor of public accounts and the clerks and sheriffs throughout the State.

Decree reversed and cause remanded for decree in accordance with this opinion.